UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

BRENDA L. BROOKS,

       Plaintiff,

v.                                                   Case Number 06-14939-BC
                                                 Honorable Thomas L. Ludington

LIEUTENANT DAVID ROTHE,
POLICE CHIEF JOHN BODIS, CITY
OF BAD AXE, ASSISTANT PROSECUTING
ATTORNEY ELIZABETH V. WEISENBACH,
PROSECUTOR MARK J. GAERTNER,
COUNTY OF HURON,

       Defendants.
_____ /

**ORDER GRANTING IN PART DEFENDANTS' MOTIONS
FOR SUMMARY JUDGMENT,
DISMISSING PLAINTIFF'S COUNTS VI AND VII WITH PREJUDICE,
AND DISMISSING PLAINTIFF'S COUNTS I THROUGH V WITHOUT PREJUDICE**

      On May 8, 2006, Plaintiff Brenda Brooks worked as the employee of a domestic violence shelter. She twice refused to let a police officer on the premises, which resulted in her arrest on two counts of resisting and obstructing an officer under state law. Those charges were withdrawn that same day, but she now brings the instant case. Plaintiff has filed suit against several defendants, alleging state law causes of action for assault and battery, false arrest, false imprisonment, gross negligence, vicarious liability and violation of 42 U.S.C. § 1983 for violations of her, *inter alia*, Fourth Amendment rights. Defendants subsequently filed two distinct motions for summary judgment under Federal Rule of Civil Procedure 56.

      On October 31, 2007, after the Court held a hearing on those motions, the Court directed the parties to provide supplemental briefing on the following issues: (1) the legal basis for Plaintiff's

standing, if any, for asserting a violation of her rights under the Fourth Amendment based on Defendant Rothe and Weisenbach's entry into the shelter; and (2) the factual basis for probable cause, if any, for an entry into the shelter to investigate a resident's purported drug overdose. Having reviewed the parties' supplemental filings, the Court will now grant Defendants' motions for summary judgment.

I.

As recited in the Court's order of October 31, 2007, the parties' filings do not identify any disagreement over genuine issues of material fact. The following factual recitation, which largely mirrors that of the previous order, relies primarily on Plaintiff's deposition and the police report of the events at issue, written that same day. As pertinent to the issues on which the Court directed supplemental briefing, additional factual development derives from the depositions of Defendant Lieutenant David Rothe and Defendant Chief John Bodis, both of the Bad Axe City Police Department.

On May 8, 2006, Plaintiff was working as a shift worker at a shelter for domestic violence victims. She had received training on the shelter policies, which included a specific policy for responding to legal and law enforcement inquiries. That policy begins by stating, "the [shelter] will maintain [resident's[1]] confidentiality at all times unless a legal exception exists." *SafeHouse Policies*, Pl. Rs. to Dft. Rothe, Bodis, and City of Bad Axe's Mot. for S. Jgmt., Ex. 5 [dkt #25-6]. The policy guides employees with respect to law enforcement searches, providing as follows:

> **Search Warrants** are a normal investigative method of choice in situations where local police or the prosecutor perceive that the prior notice provided by a subpoena or investigatory demand may result in the destruction of evidence or the flight of a

---

[1]The shelter uses the term "service participant" to describe the residents of the facility.

> wanted person.
> All searches must be conducted upon the authority of a search warrant. In order to satisfy the fourth amendment [*sic*] requirements, a search warrant must be based upon probable cause and describe the place to be searched and the items to be seized with reasonable precision.

*Id.* The manual does not address the circumstance where law enforcement might proceed with a search without obtaining a search warrant. The standards of the policy, for the most part, permit only the shelter director – and not its staff – to take actions that could implicate residents' confidentiality.

Around 4:30 a.m., according to her deposition, Plaintiff observed one of the residents having difficulty walking and talking. She believed that the person might need immediate medical attention, but, pursuant to shelter policy, she sought to have the resident make the decision to seek medical care. The resident initially declined[2] but, after Plaintiff asserted her view that the woman might require attention, the resident agreed. Plaintiff then called 911 at approximately 7:11 a.m.

After Plaintiff placed that call, Defendant Rothe came to the door. He identified himself as a first responder, although Plaintiff states that she did not see a badge. They spoke through the intercom, and she could see him via a camera. Plaintiff states that she was not sure he was a police officer. (Around 2:30 a.m. that same day, Plaintiff made a phone call for a pregnant woman who went to the hospital by ambulance. That woman's husband allegedly appeared at the shelter and identified himself as a first responder, and that man later visited the hospital.) Defendant Rothe requested access to the building. Plaintiff refused, and Defendant Rothe left in a manner that seemed angry to Plaintiff.

---

[2]Plaintiff then contacted her operations manager, Amy Kain, to inquire how to handle the situation. Her manager directed her to inquire again with the resident, because the shelter's policy was for the residents to make independent decisions.

Shortly thereafter, once the ambulance had arrived, Plaintiff contacted her manager by telephone again to get permission to copy the resident's medical release for the paramedics. The manager gave permission to copy that release. Plaintiff did not tell her about her contact with Defendant Rothe. While Plaintiff was preparing the release documents, Defendant Elizabeth Weisenbach contacted the shelter by telephone and spoke to Plaintiff. Defendant Weisenbach identified herself as an assistant county prosecutor and a member of the shelter's board. Defendant Weisenbach inquired why Plaintiff denied entry to Defendant Rothe. Plaintiff declined to give her any information, and she described her circumstance and the need to attend to an emergency situation. According to Plaintiff, Defendant Weisenbach responded by screaming about Plaintiff's incompetence, threatening her job, and indicating that Plaintiff would hear more from her.

The paramedics then took the resident to the hospital. Next, the roommate of that resident told Plaintiff that she saw the resident take three pills. Plaintiff then sought to attend to other residents, some of whom were concerned about the presence of outsiders on the premises.

At approximately 7:50 a.m., the manager called Plaintiff to ask her to stay until 9 a.m. (to permit that manager to attend her parents' doctor's appointment). Plaintiff related the conversation with Defendant Weisenbach to her manager, who instructed Plaintiff not to worry and assured her that she would address Defendant Weisenbach when she arrived.

Shortly thereafter, a man and a woman came to the door of the shelter. Plaintiff was the only staffer on the premises at that point. She recognized Defendant Rothe from earlier that morning but could not identify the woman by sight. When Plaintiff opened the door, the woman screamed that she was Defendant Weisenbach, the assistant prosecutor on the board, demanded to know the circumstances, insisted that she and Defendant Rothe be allowed to enter, and stated that the crime

scene required investigation. Plaintiff apologized and declined to give any information, pursuant to the her understanding of the training she received as a shelter employee. Defendant Rothe informed Plaintiff several times that he needed to investigate a crime scene and that she would be arrested if she did not allow him to enter. He stated that he was a police officer, but he did not demonstrate any indentification. Plaintiff asked several times if she could call her manager (who, pursuant to shelter policy, did have the authority to permit a police officer to enter). Defendants Weisenbach and Rothe did not allow her to make that call.

Plaintiff claims that she did not touch either of them as she attempted to keep them from entering. Plaintiff believes that Defendant Weisenbach pushed the door open, although Plaintiff was using a hand and foot to keep the door closed. Plaintiff was forced to step back, and Defendant Weisenbach then placed both her hands on Plaintiff's shoulders and pushed her further back. Defendant Weisenbach continued to insist that Plaintiff tell them about what was going on, and she threatened Plaintiff with jail. Plaintiff still declined, and they still did not let her call her manager. Defendant Rothe stepped in and out of the building several times for phone calls. Eventually, Defendant Rothe arrested Plaintiff, after Defendant Weisenbach told him several times to arrest her. Defendant Rothe removed a necklace with keys on it from around Plaintiff's neck. She was handcuffed, taken to the police station, booked, and placed in a holding cell. She alleges no physical injury.

While these events were developing information about the situation filtered through the police department and then through the prosecutor's office. Initially, the dispatch had indicated that the medical need involved back pain. After Defendant Rothe left the shelter from his first encounter with Plaintiff, he contacted Defendant Weisenbach. Defendant Rothe then advised Defendant Bodis

of the situation. Defendant Bodis' wife, the 911 dispatch supervisor, also contacted him to alert him that the paramedics believed that the resident had suffered a drug overdose, rather than a back injury. The dispatch supervisor also related that a video of the paramedics assisting the resident showed the resident foaming at the mouth. The discrepancy between the initial basis for the 911 call, a back injury, and what the paramedics observed, a drug overdose, was communicated to Defendant Rothe, as well as to others involved in the decisionmaking that followed.

Defendant Bodis then contacted the Huron County prosecutor, Defendant Mark Gaertner, to advise him of the situation and, in particular, of Plaintiff's refusal to provide any information. They agreed that, in light of the possible drug overdose, an investigation was necessary. They also agreed that Defendant Bodis would contact the president of the board of directors at the shelter, Huron County Commissioner Michael Gage.

The conversation between Defendant Bodis and the shelter's president addressed prior difficulties involving police intervention at the site, apparently including denial of access for arrests and subpoenas. The shelter's president assured him that he believed that these issues had been resolved by the shelter's policies, that he would look into the situation, and that the board would discuss the incident at its meeting three days later.

Thereafter, Defendant Bodis again spoke to Defendant Gaertner. They concluded that an immediate investigation of the possible drug overdose was warranted. When Defendant Weisenbach arrived, she was further apprised of the situation. She and Defendant Rothe left for the shelter. Defendant Rothe maintains that he was concerned to secure the scene, in the event that any drugs remained there and, thus, presented a risk to other residents or a risk of spoliation of evidence.

After they arrived there, Defendant Rothe contacted Defendant Bodis to advise that they

were again denied access. Defendant Bodis then contacted Defendant Gaertner. They concluded that Plaintiff should be arrested for resisting and obstructing the investigation.

After Plaintiff was arrested and later placed in a holding cell, she was released on bond. She was charged with two felony counts of resisting and obstructing under Mich. Comp. Laws § 750.81d(1). That same day, Defendant Gaertner filed a motion of nolle prosequi, and a judge granted it two days later.

On November 2, 2006, Plaintiff filed suit, alleging many claims. She alleges assault and battery against the individual defendants (count I), based, in part, on the contact at the door and placing her in handcuffs. She also alleges false arrest against the individual defendants (count II), due to her contention that they had no basis for arresting her. She next asserts false imprisonment against the individual defendants (count III), based on her detention during her arrest and in jail that day. She further claims gross negligence against the individual defendants (count IV) and asserts that Defendant City of Bad Axe (city) and Defendant Huron County (county) are vicariously liable for the conduct of the individual defendants (count V). Plaintiff, however, provides little legal basis for identifying these counts as distinct causes of action, which she apparently seeks to treat separately from exceptions to the state law immunity statute, Mich. Comp. Laws § 691.1407. Finally, she claims a violation of 42 U.S.C. § 1983 for violations of her Fourth Amendment rights against all defendants (counts VI and VII).

On June 13, 2007, Defendants Rothe, Bodis, and city (Defendant police) filed a motion for summary judgment under Federal Rule of Civil Procedure 56, and on August 22, 2007, Defendants Weisenbach, Gaertner, and county (Defendant prosecutors) filed a motion for summary judgment under the same rule, and, putatively, under Federal Rule of Civil Procedure 12(b). On September

24, 2007, the Court held a hearing on those two motions. On October 31, 2007, the Court directed the parties to submit supplemental briefing on the following issues: (1) the legal basis for Plaintiff's standing, if any, for asserting a violation of her rights under the Fourth Amendment based on Defendant Rothe and Weisenbach's entry into the shelter; and (2) the factual basis for probable cause, if any, for an entry into the shelter to investigate a resident's purported drug overdose

II.

Under Federal Rule of Civil Procedure 56(c), a court must review "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," to conclude that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Court must view the evidence and draw all reasonable inferences in favor of the non-moving party and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-252 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact. *Michigan Paytel Joint Venture v. City of Detroit*, 287 F.3d 527, 534 (6th Cir. 2002). The party bringing the summary judgment motion has the initial burden of informing the district court of the basis for its motion and identifying portions of the record which demonstrate the absence of a genuine dispute over material facts. *Mt. Lebanon Personal Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002).

III.

A.

Having previously disposed of arguments regarding excessive force, Michigan's resisting

and obstructing statute, and prosecutorial immunity in the Court's order of October 31, 2007, the focus of the present order will be directed toward the issues on which the parties provided supplemental briefing. First, the Court will consider whether Plaintiff had standing to raise a Fourth Amendment challenge to Defendants Rothe and Weisenbach's entry into the shelter.

As set out in the language of 42 U.S.C. § 1983, a claim of liability against a government actor is available "to the party injured," i.e., the injury must be personal to the plaintiff. *See also Jaco v. Bloechle*, 739 F.2d 239, 242 (6th Cir. 1984) ("The § 1983 cause of action, by virtue of the explicit language of the section itself, is a personal action cognizable only by the party whose civil rights ha[ve] been violated . . . ."). For a claim based on a Fourth Amendment violation, a person has the right to bar a government agent's entry onto the premises on "whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." *Minnesota v. Olson*, 495 U.S. 91, 95 (1990) (citing *Katz v. United States*, 389 U.S. 347 (1967); *Rakas v. Illinois*, 439 U.S. 128, 143 (1978)).

Here, Plaintiff acted pursuant to her employer's express instructions. Whether a correct statement of the law or not, her employer had a policy that directed its employees, acting as its representative, to permit entry to search the premises only with a search warrant. On the date and time in question, Plaintiff was the sole employee of the shelter on the premises. As such, she acted as the shelter's representative and gave voice to the shelter's interest, as conveyed to her in the policy, in protecting residents and in permitting entry only with a search warrant. Setting aside any exception for exigent circumstances, which will be discussed below, she asserted the lawful interest of her employer, like any citizen, to be free of a warrantless search. The lawfulness of Defendants

Rothe and Weisenbach's directive for Plaintiff to permit their entry without a warrant turns on the lawfulness of their order. If their directive had no support under federal law, then Plaintiff had an interest in resisting that unlawful directive, even if the state has seen fit to make resistance to such directives a felony.[3] Accordingly, the Court concludes that Plaintiff does have standing to assert a violation of her Fourth Amendment rights, based on her employer's directive to assert its right to be free of a warrantless search of the property.

B.

"Exigent circumstances are situations where real immediate and serious consequences will certainly occur if a police officer postpones action to obtain a warrant." *United States v. Williams*, 354 F.3d 497, 503 (6th Cir. 2003) (citations and internal quotations omitted). That is, prompt government action must occur and the circumstances dictate that further delay to secure a warrant would be unacceptable under the circumstances. *United States v. Plavcak*, 411 F.3d 655, 663 (6th Cir. 2005). A court must review the totality of the circumstances and the inherent necessities of the situation as it then existed to determine whether exigent circumstances existed. *United States v. Rohrig*, 98 F.3d 1506, 1511 (6th Cir. 1996) (citations omitted). The inquiry focuses, not on an officer's subjective intentions, but on whether an objectively reasonable officer could have believed that exigent circumstances existed. *See O'Brien v. City of Grand Rapids*, 23 F.3d 990, 999 (6th Cir. 1994). Hot pursuit of a fleeing felon, imminent destruction of evidence, the need to prevent a suspect's escape, or a risk of danger to police or others all present exigent circumstances. *Thacker*

---

[3]In *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001), the Supreme Court held that a police officer need not engage in an in-the-field balancing test and may simply rely on the existence of probable cause to arrest for an offense committed in the officer's presence, no matter how minor. The assessment of whether an arrest is supported by probable cause, however, differs from whether police directives themselves comport with federal constitutional requirements.

*v. City of Columbus*, 328 F.3d 244, 253 (6th Cir. 2003) (citation omitted). Although a determination about exigent circumstances generally requires a decision by a jury, a trial court can decide the issue as a matter of law, if a finder of fact could reach but one conclusion and if the facts are essentially undisputed. *See Ewolski v. City of Brunswick*, 287 F.3d 492, 501 (6th Cir. 2002) (citation omitted).

Here, Plaintiff placed a call to 911 regarding a resident with back pain. Subsequently, the paramedics identified the medical need as involving a drug overdose, rather than back pain. This new information, as well as the existence of the discrepancy, was communicated to the 911 dispatch supervisor, who conveyed that information to Defendant Bodis. This information was also related to Defendant Rothe. Thus, the information objectively available to an officer at the scene, regardless of Defendants' subjective intentions, was that a person had overdosed on drugs and that an attempt was made to conceal that fact from police. Further, Plaintiff had twice barred entry to Defendant Rothe, even though he first arrived on the premises directly after Plaintiff had placed a call to 911 requesting assistance. On these undisputed facts, an objectively reasonable police officer could have concluded that evidence would be imminently destroyed. Accordingly, exigent circumstances existed, where the additional time spent getting a warrant would have jeopardized the likelihood of finding the evidence of possession or use of drugs still on the scene. Because exigent circumstances did exist, Defendants Rothe and Weisenbach's entry without a warrant did not violate the Fourth Amendment. Thus, Defendants Rothe, Bodis, Weisenbach, and Gaertner have qualified immunity because, in the light most favorable to them, no constitutional violation occurred,[4] and, absent any

---

[4] "Qualified immunity is an entitlement not to stand trial or face the other burdens of litigation." *Saucier v. Katz*, 533 U.S. 194, 200 (2001) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). First, a court must inquire whether, "in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right." *Id*. at 201. Second, if a constitutional violation has occurred, "the court then determines whether the

constitutional violation, Defendants city and county are entitled to judgment as a matter of law, given the undisputed facts.

C.

Plaintiff's remaining claims arise under state law: claims of false arrest, false imprisonment, assault and battery, gross negligence, and state law vicarious liability. 28 U.S.C. § 1367(a) provides for a circumscribed discretion for a federal district court to continue to exercise subject matter jurisdiction after the dismissal of federal claims: "The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ." Indeed, "a federal court that has dismissed a plaintiff's federal-law claims should not ordinarily reach the plaintiff's state-law claims." *Moon v. Harrison Piping Supply*, 465 F.3d 719 (6th Cir. 2006) (citation omitted); *see also The Robert N. Clemens Trust v. Morgan Stanely DW, Inc.*, 485 F.3d 840, 853 (6th Cir. 2007) ("[I]n the usual case in which all federal law claims are eliminated before trial, the balance of factors to be considered . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.") (quoting *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). Without any remaining claims over which this Court has original jurisdiction, the Court will decline to exercise supplemental jurisdiction over Plaintiff's state law claims.

IV.

Accordingly, it is **ORDERED** that Defendant police and Defendant prosecutors' motions

---

constitutional right that was violated was 'clearly established' at the time of the violation." *Id.* Ultimately, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202.

for summary judgment [dkt ## 21, 29] are **GRANTED IN PART** and **DENIED IN PART**. Defendants' motions for summary judgment are **GRANTED**, to the extent that they request summary judgment as to counts VI and VII, Plaintiff's claims of a violation of the Fourth Amendment under 42 U.S.C. § 1983; counts VI and VII are **DISMISSED WITH PREJUDICE**. Plaintiff's state law claims, counts I through V, are **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction.

s/Thomas L. Ludington<br>
THOMAS L. LUDINGTON<br>
United States District Judge

Dated: January 9, 2008

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on January 9, 2008.

s/Tracy A. Jacobs<br>
TRACY A. JACOBS

---